UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DOUGLAS YATES,            ) | |
|                           ) | |
|    Plaintiff,        ) | Civil Action No. 3:22-cv-075-CHB |
|                           ) | |
| v.                        ) | |
|                           ) | **MEMORANDUM OPINION AND** |
| ROYAL CONSUMER PRODUCTS, LLC ) | **ORDER** |
| AND STEVEN SCHULMAN,       ) | |
|                           ) | |
|    Defendants.       ) | |
|                           ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Joint Motion to Dismiss Or, Alternatively, Stay the Proceedings and Compel Arbitration filed by Defendants Royal Consumer Products, LLC ("RCP") and Steven Schulman, [R. 6]. Plaintiff Douglas Yates responded, [R. 9], and Defendants replied, [R. 10]. This matter is now ripe for review. For the reasons stated below, the Court will grant the Defendants' Motion.

**I. Background**

Between 1983 and 2020, Yates was an employee of RCP. [R. 9, p. 1]; [R. 6–1, p. 1]. In 2001, Yates was promoted to production supervisor at RCP's plant located at 1120 W. Magnolia Ave., Louisville KY, 40210. [R. 6–1, p. 2]. To facilitate this promotion, Yates and RCP entered into a new contract (the "Agreement") governing Yates' expanded duties. *Id* at 2. The Agreement included three key provisions. First, a provision requiring any claim or controversy arising out of the underlying agreement to be settled by arbitration:

> 16. **ARBITRATION**. Other than as provided in Section 11(b) herein, any controversy or claim arising out of or relating to this agreement shall be settled by arbitration between the parties hereto in the City of Norwalk, Connecticut. The arbitration shall be submitted to and determined by a panel of three arbitrators (the

> "Arbitrators") in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction. The Arbitrators shall be jurisdictionally bound by the terms of this Agreement.

*Id.* at 2–3; *see also* [R. 6–2, Ex. A, p. 8]. *Id.* Second, a provision providing that the Agreement shall be governed by Connecticut law:

> 17. **GOVERNING LAW.** This agreement shall be governed and construed in accordance with the laws of the State of Connecticut.

[R. 6–2, Ex. A, p. 9]. And third, a severability provision:

> 19. **SEVERABILITY**. If any provision of this agreement is held to be unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect.

*Id.*

In 2016, Yates developed medical problems that limited his ability to work. [R. 9, p. 1]. Specifically, Yates suffered from an intestinal condition that "interfered with standing, sitting, reaching, lifting, breathing, staying alert and conscious, and working." *Id.* Because of this condition, Yates was hospitalized twice. [R. 1–1, p. 8, ¶ 14]. He requested and received leave as an accommodation for his disability in 2016 and 2017. *Id.* ¶ 17. Yates alleges that when he returned from the hospitalizations, he was treated differently and Schulman, Yates's manager, made "frequent comments complaining about Mr. Yates not coming to work because of his disability and related accommodations." *Id.* ¶¶ 19–20; [R. 9, p. 16]. Yates further alleges that Defendants subjected him to constant scrutiny, treated him in a degrading manner, and denied his requests for bereavement and disability-related absences. [R. 1–1, p. 9, ¶¶ 23–25]. In August 2017, Yates was terminated.[1] *Id.* at ¶ 26.

---

[1] In their Motion, Defendants erroneously state that Yates asserts "claims arising from a leave of absence he took in March 2020 at the outset of the coronavirus pandemic." [R. 6–1, p. 1]. However, the Complaint, as well as the Affidavits of Yates and RCP's Human Resources Manager Jennifer Jordan, make clear that Yates was terminated in 2017. [R. 1–1, p. 9, ¶ 26; R. 6–3, Ex. B, pp. 2–3, ¶¶ 9–10; R. 9–1, p. 2, ¶ 16].

Based on these allegations, on January 18, 2022, Yates filed a Complaint against RCP and Schulman in Jefferson Circuit Court, asserting disability discrimination under the Kentucky Civil Rights Act ("KCRA") and retaliation under the KCRA. [R. 1–1, Ex. A, pp. 10–13, ¶¶ 29–51]. Specifically, Yates claims RCP engaged in disability discrimination and retaliation while Schulman, in his individual capacity, engaged in retaliation. *Id*. at 10–11, ¶¶ 34, 39, 48. RCP timely removed the case to this court on the basis of diversity jurisdiction. [R. 1]. On February 18, 2022, Defendants filed a Joint Motion to Dismiss or, Alternatively, Stay the Proceedings and Compel Arbitration. [R. 6]. In their Motion, Defendants argue that the arbitration provision in the Agreement is valid and enforceable as to all Yates's claims, including those against Schulman in his individual capacity. [R. 6–1, pp. 7–9]. Defendants further argue that, even if the Court finds the venue and choice of law provisions unenforceable, the Agreement's severability provision allows the Court to sever the unenforceable provisions and enforce the agreement to arbitrate. *Id*. at 9–11. Yates responded, [R. 9], primarily arguing that the arbitration provision is unenforceable because the venue and choice of law provisions render the agreement to arbitrate substantively unconscionable. *Id*. at 6–14. Yates also argues that the arbitration agreement does not cover his claims against Schulman and that Defendants have failed to properly authenticate the Agreement. *Id*. at 14–21. Defendants replied, [R. 10]. Plaintiff subsequently filed a Notice of Supplemental Authority, [R. 11], alerting the Court to the Supreme Court's recent decision in *Morgan v. Sundance, Inc*., 142 S. Ct. 1708 (2022). Defendants responded that *Morgan* is inapplicable, [R. 12, p. 2].[2]

---

[2] The Court agrees with Defendants that *Morgan* is inapplicable. In *Morgan*, the Court held that "the strong federal policy favoring arbitration" did not justify an arbitration-specific waiver rule demanding a showing of prejudice. *Id*. at 1712. Rather, in analyzing arbitration provisions, courts should apply the procedural rules governing all contracts. *Id*. at 1713 ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.") (citation omitted). Here, Defendants agree that "general contract

3

## II.     Standard of Review

Defendants move the Court to compel arbitration and to dismiss Yates's claims pursuant to Federal Rule of Civil Procedure 12 and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. [R. 6, p. 1]. Specifically, Defendants move to compel arbitration pursuant to section four of the FAA. *See id.* at 4. As a result, the Court's standard of review is different than that required under Rule 12.

When the Court is asked to compel arbitration under § 4 of the FAA, the Court first "must determine whether the parties have agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). If the Court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate,"— a showing that mirrors the summary judgment standard. *Id.* (citation omitted)

Therefore, "[i]n ruling on a motion to compel arbitration, courts apply the summary judgment standard in Fed. R. Civ. P. 56(c)." *Freeman v. Easy Mobile Labs, Inc.*, No. 1:16-CV-00018-GNS, 2016 WL 4479545, at *1 (W.D. Ky. Aug. 24, 2016) (citing *Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011)); *see also Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment.") (internal citation omitted). Accordingly, the Court must draw all reasonable inferences in favor of Yates and must

---

principles apply to construction and enforcement of arbitration agreements," [R. 12, p. 2], and the Court utilizes traditional contract principles in arriving at its holding.

refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150–51 (2000).

**III. Analysis**

The Court must first determine if the parties agreed to arbitrate the claims in question. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute."). In making that determination, a court must carry out a four-step inquiry: the Court must determine (1) if the parties have a valid agreement to arbitrate; (2) if the dispute before the court is within the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be non-arbitrable; and (4) if the court finds some but not all claims arbitrable, whether to stay the non-arbitrable claims pending arbitration. *Stout*, 228 F.3d. at 714. The Court addresses these four steps in turn.

**A. Existence of a Valid Arbitration Agreement**

The decision to grant a motion to compel arbitration is strictly dependent on the existence of a valid agreement to arbitrate. This does not require a wider evaluation of the validity or interpretation of a contract, rather only a finding of the validity of the narrow agreement to arbitrate. *See Great Earth Cos.*, 288 F.3d at 889 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)) ("[I]n deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole[.]"); *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken."). "[S]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or

unconscionability." *Great Earth Cos.*, 288 F.3d at 889 (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also Atricure, Inc. v. Meng*, 12 F.4th 516, 522 (6th Cir. 2021) ("The Court starts with a presumption that an arbitration agreement is governed by the contract law of the state whose laws otherwise apply to it.").

Here, it is not entirely clear which state's laws govern this dispute. A federal court sitting in diversity typically applies the substantive law of the state in which it sits. *CK Franchising, Inc. v. SAS Servs.*, No. 6:18-CV-94-REW-HAI, 398 F. Supp. 3d 163, 173 (E.D. Ky. July 10, 2019) (citing *Banek Inc. v Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993)). However, the Agreement between RCP and Yates contains a "Governing Law" provision, which states that the Agreement "shall be governed by and construed in accordance with the laws of the State of Connecticut." [R. 6–2, Ex. A, p. 9]. Nonetheless, the Court finds that a conflict of law analysis is unnecessary at this juncture because arbitration is required under either Connecticut or Kentucky law.

### i. Existence

RCP has satisfied its burden, under both Kentucky and Connecticut law, to demonstrate the existence of a valid arbitration agreement. Under Kentucky law, a party seeking the enforcement of an arbitration agreement makes a prima facie showing of the existence of such an agreement by producing a written, signed copy of said agreement. *MHC Kenworth-Knoxville/Nashville v. M&H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (citation omitted). A prima facie showing of a signed arbitration agreement shifts the burden to the non-movant, who must produce evidence to contest the existence of the agreement. *Id.* (citation omitted). Disproving an agreement which is facially extant is a "heavy burden." *Id.* (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)).

Likewise, under Connecticut law, "[t]he party seeking an order compelling arbitration must substantiate its entitlement to arbitration by a showing of evidentiary facts that support its claim that the other party agreed to arbitration." *Reeves v. Coverall N. Am., Inc.*, 444 F. Supp. 3d 332, 339 (D. Conn. 2020) (quoting *D'Antuono v. Service Road Corp.* 789 F. Supp. 2d 308, 319 (D. Conn. 2011)) (internal quotation marks omitted). The production of a signed agreement to arbitrate provides presumptive evidence that such an agreement exists. *See Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 181 (D. Conn. 2003) ("Plaintiff actually signed the arbitration agreement at issue, which serves as presumptive evidence that an agreement was formed.")*; see also D'Antuono,* 789 F. Supp. 2d at 323 ("In Connecticut, the fact that a party signed a written agreement is usually conclusive evidence of contract formation."). "If the party seeking to compel arbitration makes such a showing, the party opposing arbitration may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried as to the making of the arbitration agreement." *Reeves*, 444 F. Supp. 3d at 339 (quoting *D'Antuono*, 789 F. Supp. 2d at 319–20).

Here, RCP has produced a written copy of the underlying Agreement, signed by Yates and initialed by him on the page containing the arbitration provision. [R. 6–2, Ex. A, p. 9]. Accordingly, RCP has met its initial burden under both Kentucky and Connecticut law. *See MHC Kenworth-Knoxville/Nashville,* 392 S.W.3d at 906*; see also Reeves*, 444 F. Supp. 3d at 339. As a result, the burden shifts to Yates to contest the existence of the Agreement. *See MHC Kenworth-Knoxville/Nashville,* 392 S.W.3d at 906; *see also Reeves*, 444 F. Supp. 3d at 339.

Yates has wholly failed to meet his burden. In fact, he has failed to produce *any* evidence to contest the actual existence of the Agreement, let alone evidence sufficient to meet a "heavy burden." *MHC Kenworth-Knoxville/Nashville,* 392 S.W.3d at 906. Instead, Yates's argument

focuses on RCP's failure to authenticate the Agreement, aside from one cursory statement that "there is no evidence that the twenty-year-old document is what Defendants claim it to be[.]" [R. 9, p. 20].

First, the Court finds that Yates's argument is unpersuasive because, as noted by the Defendants, Yates admitted in his Affidavit that he signed an employment agreement with RCP in 2001. [R. 10, p. 4]; *see also* [R. 9–1, p. 2, ¶ 18]. Yates does not argue that Defendants' proffered exhibit differs in any regard from the employment agreement he admitted to signing. *See* [R. 9, pp. 19–21]. Thus, despite his cursory statement to the contrary, Yates seems to concede that the Agreement is "what the Defendants claim it to be[.]" *Id.* at 20.

Second, "[a]uthentication is a 'relatively low hurdle[.]'" *United States v. Quintana*, 763 F. App'x 422, 426 (6th Cir. 2019) (quoting *United States v. Farrad*, 895 F.3d 859, 878 (6th Cir. 2018)). "Evidence is authentic when the proponent offers 'sufficient proof . . . that a reasonable juror could find in favor of authenticity.'" *Id.* (quoting *United States v. Jones*, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997)). Thus, "[a]s a general matter, the Federal Rules of Evidence do not require that the testimony of a custodian or other qualified witness regarding business records to be based on personal involvement in, or personal knowledge of, the preparation of the records." *Rote v. Zel Custom Mfg., LLC*, 383 F. Supp. 3d 779, 784 (S.D. Ohio 2019) (citing *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003)); "Rather, 'all that is required of the witness is that he or she is familiar with the record keeping procedures of the organization.'" *Reffitt v. Summit Treestands, LLC*, No. 2:20-cv-1059, 2021 U.S. Dist. LEXIS 187837, at *4 (S.D. Ohio Sept. 30, 2021) (quoting *Jenkins*, 345 F.3d at 936). Here, Jennifer Jordan is employed by RCP as Human Resources Manager, a position she has held since April 2010. [R. 6–3, Ex. B, p. 1, ¶ 2]. In this position, Jordan is responsible for maintaining employee records and forms, as well as other

information including employment agreements. *Id.* Specifically, she is responsible "for the oversight of the Human Resources functions for hiring employees in Kentucky, including employment applications, new-hire processing . . . employee records management, various personnel issues, and the human resources policies and procedures." *Id.* at 1–2, ¶ 3. In her Affidavit, Jordan verified:

> The Employment Agreement attached as Exhibit A is kept by [RCP] in the course of regularly conducted business activity. In addition, it was the regular practice of [RCP] business activity for an individual with knowledge of the act or event to make the record or to transmit information of the occurrence to be included in the record. The record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, or were made reasonable soon thereafter. The record attached hereto is an exact duplicate of the original.

*Id.* at 2, ¶ 7. Therefore, because Jordan is a longstanding RCP employee who is familiar with RCP's recordkeeping practices, her Affidavit sufficiently demonstrates the authenticity of the Agreement.

Lastly, even if the submitted Affidavit was insufficient to authenticate the Agreement, failure to authenticate alone is an inappropriate basis on which to deny a motion to compel arbitration. A motion to compel arbitration is evaluated by the same standard as a motion for summary judgment. *See Great Earth Cos.,* 288 F.3d at 889. At the summary judgment stage, the court may not consider unauthenticated documents, *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009), unless "the objecting party simply argue[s] that the proponent failed to authenticate the documents, as opposed to challenging the authenticity of the documents." *Louisville Galleria v. Philadelphia Indemnity Ins.*, No. 3.20-CV-733-CHB, 2022 WL 891628, at *6 (W.D. Ky. Mar. 25, 2022) (quoting *Thomas v. Nat'l Coll. of Va., Inc.,* 901 F. Supp. 2d 1022, 1035 (S.D. Ohio 2012)). As stated above, Yates does not argue that the Agreement itself is inauthentic, but rather that RCP failed to authenticate it before submitting it to the Court. *See* [R.

9

9, pp. 19–21]. Accordingly, in the interests of justice, and because Yates does not contest the Agreement's authenticity, the Agreement is properly before the Court, the Court finds that an arbitration agreement exists.

      ii.    **Validity**

The Court further finds that the agreement to arbitrate is valid, regardless of the validity of other, severable provisions. In enacting the FAA, Congress aimed "to overcome judicial resistance to arbitration" and to "place[] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 444 (2006). As such, Section 2 of the FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9. U.S.C. § 2 (emphasis added). In other words, while courts "may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions . . . generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs.*, 517 U.S. at 687 (citations omitted). Theses defenses, however, must be narrowly raised *against the specific arbitration provision* of an agreement as opposed to the entirety of the agreement. *See Great Earth Cos.*, 288 F.3d at 889; *Preston,* 552 U.S. at 353. Thus, whether the contract as a whole is enforceable has little bearing on the question of whether arbitration should be compelled. Instead, if an arbitration provision is found to be valid, all questions of general validity will be settled by the arbitrator. *See McGrew*, 244 F. Supp. 3d at 592.

Here, Yates argues that the combination of the Connecticut venue clause and a Connecticut choice of law clause render the arbitration clause substantively unconscionable. *See* [R. 9, pp. 8–10]. However, a motion to compel arbitration is denied only if the opposing party

10

raises a material question *as to the existence or validity of an agreement to arbitrate*. *Great Earth Cos.,* 288 F.3d at 889. Accordingly, the severability of those clauses from the agreement to arbitrate serves as a threshold question. If those provisions are severable from the agreement to arbitrate, then Yates must arbitrate his claims regardless of the unreasonableness of those provisions. In other words, if severable, the validity or invalidity of these provisions does not present a material question about the validity of the agreement to arbitrate. *See id.* at 892 (holding that arguments as to the validity of a severable contract provision did not put the validity of the arbitration agreement "in issue.").

      Both Connecticut and Kentucky law adopt similar approaches to the severability of contract provisions; the severance or unity of a contract is guided first and foremost by the manifest intentions of the contracting parties. *Knight v. Hamilton*, 233 S.W.2d 969, 971 (Ky. Ct. App. 1950) ("In determining whether a contract is severable, the intention of the parties is a controlling factor."); *Mercury Dev., LLC v. Motel Sleepers, Inc.*, No. 11-147-GFVT, 2013 U.S. Dist. LEXIS 137370, at *20 (E.D. Ky. Sept. 25, 2013) (citing *Knight* for the proposition that the severability of contracts depends upon the intention of the parties.); *Venture Partners v. Synapse Technologies*, 679 A.2d. 372, 377 (Conn. App. Ct. 1996) ("The determinative test is in ascertaining from the language used, read in the light of the surrounding circumstances, what was the intention of the parties.") (quoting *Hartford–Connecticut Tr. Co. v. Cambell*, 95 Conn. 399, 405 (1920)). A contract provision is non-severable when its removal would fundamentally alter the purpose or meaning of a contract. *See Cox v. Wagner*, 907 S.W.2d 770, 771 (Ky. 1995) ("Where part of a contract is void, the whole contract will not be set aside unless good and bad parts cannot be separated without altering its purpose.") (quoting *Farmers' Bank of White Plains v. Bass*, 292 S.W. 489 (1927)); *DeMattia v. Mauro,* 86 Conn. App. 1, 12 (Conn. Ct. App. 2004)

(citing *Timely Prods., Inc. v. Costanzo*, 465 F. Supp. 91, 97 n.6 (D. Conn. 1979)) ("In determining the severability of the contract, the court looks to whether the contract's parts and its consideration are common to each other or independent of one another[.]"). Fundamentally, finding two provisions inseverable requires that the two provisions be intertwined such that one cannot stand without the other. *See Brookdale Sr. Living v. Stacy*, 27 F. Supp. 3d 776, 790 (E.D. Ky. 2014) ("[T]he question is whether the arbitration clause is so intertwined with the unconscionable provision that the two clauses cannot be severed from each other."); *Fraser v. Wyeth, Inc.*, 992 F. Supp. 2d 68, 99 n.4 (quoting *Venture Partners*, 679 A.2d at 377) ("[I]t is the general rule that a severable contract is one in its nature and purpose susceptible of division and apportionment.").

Here, the Agreement between RCP and Yates includes a severability provision which expressly states that any invalidated clause is severable form the rest of the contract:

> 19. **SEVERABILITY**. If any provision of this Agreement is held to be unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect.

[R. 6–2, Ex. A, p. 9]. By including this severability clause in the contract, the parties have signaled their intent for provisions to be interpreted as severable whenever possible. *See Great Earth Cos.*, 288 F.3d at 891 (citing the severability provision of an agreement for the proposition that "the terms of the Agreement itself make it clear that the parties intended the agreement to arbitrate to survive, even if certain parts of Article 15 (the arbitration and venue section) were found to be unenforceable."). In light of this stated intent, it falls on the Court to presume severability whenever possible. As explained above, this presumption of severability is not absolute and can be overcome by showing that the severance of a provision would fundamentally

alter the meaning of another provision or the contract as a whole. *See Cox*, 907 S.W.2d at 771; *Venture Partners*, 679 A.2d at 377.

Further, the benefits conveyed by the venue and choice of law provisions are independent from the benefits conveyed by the agreement to arbitrate. RCP's principal office is located in Norwalk, Connecticut, so the venue selection provision guarantees RCP a convenient location to litigate claims arising out of the agreement. *See* [R. 1–1, Ex. A, p. 7, ¶ 2]. The choice of law provision guarantees that the law governing the agreement is one familiar to the drafter, who presumably practices Connecticut law. *See id.* On the other hand, arbitration allows the parties to litigate claims via a procedure that is more private, more expeditious, and more flexible than the traditional public judicial tribunal. Put simply, the provisions are severable because the benefits conveyed by the arbitration agreement continue to be conveyed even if the venue and choice of law provisions have been excised.

Yates argues that the choice of law and venue clauses cannot be severed from the agreement to arbitrate because, when looked at cumulatively, the three clauses create an impossibly high bar of entry for Kentucky litigants. [R. 9, pp. 11–12]. In support of his argument that the venue and choice of law provisions cannot be severed from the agreement to arbitrate, Yates cites to *Curtis Green & Clay Green, Inc. v. Frazier,* No. 2020-CA-0781-MR, 2021 WL 2878360 (Ky. Ct. App. July 9, 2021), *review granted* (Oct. 20, 2021). However, *Green* is readily distinguishable from this case. First, the contract in *Green* did not have a severability clause, leaving the intent of the parties ambiguous. *Id.* at *8. In contrast, the Agreement between Yates and RCP contains a severability clause that makes clear the parties had the intent to sever unenforceable clauses whenever possible. *See* [R. 6–2, Ex. A, p. 9].

Second, the venue and choice of law provisions at issue here differ from the provision at issue in *Green*, which limited the damages the arbiter could award to a litigant. *Green*, 2021 WL 2878360 at *2. When evaluating the limitation of damages provision, the Kentucky court found that though the provision was unconscionable, severability was not possible because the provision was not as "distinct" as suggested, "especially where the contract [did] not contain a severability clause." *Id.* at 8. Further, the damages limitation provision in *Green* was deeply intertwined with the agreement to arbitrate, because damages limitations of this sort would be unavailable in a traditional forum. *See id.* at 7–8. In other words, the arbitration proceeding itself would be fundamentally different if the damages limitation were severed. Here, however, the venue and choice of law provisions are readily "distinct" from the arbitration provision. *Id.* Put differently, severing the venue and choice of law provisions would not fundamentally alter the arbitration agreement. Accordingly, the contested provisions are severable from the agreement to arbitrate, and their enforceability is immaterial to the motion to compel arbitration. Based on the severability of the venue and choice of law provisions, and the parties' intent to submit all issues to arbitration as discussed below, *see infra* Section III(C), Yates's unconscionability arguments may be more properly addressed by the arbitrator. *See Weddle Enters.,* 2014 U.S. Dist. LEXIS 146812, at *9 (quoting *Duran v. J. Hass Group*, LLC, 2012 U.S. Dist. LEXIS 110299, at *4 (E.D.N.Y. June 8, 2012), *aff'd*, 531 F. App'x 146, 148 (2d Cir. 2013)) ("[T]he validity of contractual clauses dictating the forum for arbitration is now commonly agreed to be a procedural matter for determination by the arbitrator.") (internal quotation marks omitted).

### B. Coverage of Disputed Claims

The Court need not determine whether the Agreement encompasses all Yates's claims, as the parties clearly intended the arbitrator to determine arbitrability. "The question of arbitrability

is one for the courts unless the parties 'clearly and unmistakably provide otherwise.'" *McGee v. Armstrong*, 941 F.3d 859, 865–66 (6th Cir. 2019) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Here, the parties have "clearly and unmistakably" provided that the arbitrator should determine arbitrability. *Id*.

AAA Rule 7(a) "expressly confers to the arbitrator the 'power' to decide questions of arbitrability." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1264 (S.D. Ohio Sept. 28, 2020); *see also Blanton*, 962 F.3d at 845. The rule provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[3] Importantly, the designation of the AAA Rules as the governing procedure of an arbitration agreement is considered by the Sixth Circuit (and by all other circuit courts that have addressed the issue) as "clear and unmistakable" evidence that the parties intended to designate decisions of arbitrability to the arbitrator. *See Blanton,* 962 F.3d at 844–846 ("[E]very one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'"); *McGee*, 941 F.3d at 866.

Here, the arbitration clause within the Agreement between RCP and Yates directly invokes the AAA rules:

> 16. **ARBITRATION**. Other than as provided in Section 11(b) herein, any controversy or claim arising out of or relating to this agreement shall be settled by arbitration between the parties hereto in the City of Norwalk, Connecticut. The arbitration shall be submitted to and determined by a panel of three arbitrators (the "Arbitrators") *in accordance with the rules then obtaining of the American Arbitration Association*, and the judgment upon award may be entered in any court

---

[3] AM. ARB. ASS'N., COMMERCIAL RULES AND MEDIATION PROCEDURES (2013), https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf (emphasis added).

>having jurisdiction. The Arbitrators shall be jurisdictionally bound by the terms of this agreement.

[R. 6–2, Ex. A, pp. 8–9] (emphasis added). This provision designates two important elements: (1) any "controversy or claim" be subject to arbitration, and (2) arbitration is to occur on the basis of the AAA rules. While not identical, this language closely mirrors the language at issue in *McGee*— "Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association." *McGee*, 941 F.3d at 866; *see also Blanton*, 962 F.3d at 845–46 (explaining that the *McGee* court "relied on the incorporation of the AAA Rules" *not* the provision describing the procedures by which the parties had to raise questions of arbitrability to the arbitrator, in holding that the parties had 'clearly and unmistakably' agreed to arbitrate 'arbitrability.'"). Accordingly, by providing for arbitration in accordance with the AAA Rules, Yates and RCP agreed that an arbitrator would determine questions of arbitrability. As a result, the issue of whether Yates's claims fall within the scope of the Agreement's arbitration provision is an issue for the arbitrator, not the Court, to decide. *See Henry Schein,* 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

### C. Nonarbitrable Federal Claims

The third task before the Court—whether Congress intended any federal claims to be nonarbitratable—is irrelevant here as no federal claims are asserted. *See Stout*, 228 F.3d at 714; *see also* [R. 1–1]. Accordingly, the Court will not address it.

### D. Disposition of proceeding

As to the final task—whether to stay the remainder of the proceedings pending arbitration—the Court finds it appropriate to stay the case. Section 3 of the FAA states that a district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Recently, in *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938 (6th Cir. 2021), the Sixth Circuit held that Section 3 of the FAA "conveys a mandatory obligation" on a district court to stay a case, rather than dismiss it, on application of one of the parties. *Id.* at 941. The Sixth Circuit reasoned that a stay allows the parties to better utilize the "provisions [within the FAA] that enable a district court to facilitate an arbitration" and "a dismissal, unlike a stay, permits an objecting party to file an immediate appeal . . . undercut[ting] the pro-arbitration appellate-review provisions of the [FAA]." *Id.* at 941–42. The Sixth Circuit left open the question of whether a district court must stay the case when neither party requests a stay. *See id.* at 941.

Here, RCP requested the Court dismiss the case or stay the matter pending arbitration, and Yates did not specifically request that the Court stay the case. *See* [R. 6–1; R. 9]. The Court finds, given the considerations highlighted in *Arabian Motors*, that a stay is appropriate. *See* 19 F.4th at 941–42; *see also Mester v. McGraw Hill, LLC*, 2:21-cv-1741, 2022 U.S. Dist. LEXIS 780 (S.D. Ohio Jan. 4, 2022) (analyzing an analogous situation, in which a party moved the Court to dismiss the case or stay the matter pending arbitration, and holding that "[R]ecent Sixth Circuit caselaw makes clear that Section 3's use of 'shall' requires the Court to stay the case so that is what the Court will do.") (citing *Arabian Motors*, 19 F.4th at 941–42). Accordingly, the Court will stay the matter pending arbitration.

E.  Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Joint Motion to Dismiss and Compel Arbitration **[R. 6]** is **GRANTED**.

2. The matter is **STAYED** pending arbitration.

This the 15th day of August, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY